IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SRAM CORPORATION, )
)
    Plaintiff, )
)
v. ) No. 04 C 2162
)
FOX FACTORY, INC., d/b/a FOX )
RACING SHOX, )
)
    Defendant. )
)

## MEMORANDUM OPINION AND ORDER

Plaintiff SRAM Corporation ("SRAM") sued defendant Fox Factory, Inc., d/b/a Fox Racing Shox ("Fox") for patent infringement. SRAM alleges that Fox is infringing United States Patent No. 6,217,049 ("the '049 Patent"), entitled "Bicycle Suspension System with Spring Preload Adjuster and Hydraulic Lockout Device." Fox now moves for claim construction, specifically of thirteen phrases in Claim 16 of the '049 Patent.[1] Claim construction is a matter of law. *Vivid Techs., Inc. v. Amer. Science & Engineering, Inc.*, 200 F.3d 795, 804 (Fed. Cir. 1999).

The relevant claim, Claim 16, in the '049 Patent is as follows:

> 16. A lockout mechanism for a bicycle suspension fork having a pair of legs, each leg having first and second telescoping fork tubes, said fork undergoing compression when said fork tubes telescope together and expansion when said fork tubes telescope apart, said lockout mechanism selectively converting

---

[1] Fox originally moved for construction of eighteen phrases, but SRAM and Fox have reached agreement on five of those phrases.

said bicycle suspension fork from an energy absorbing suspension system permitting compression of said fork to a relatively rigid system inhibiting compression of said fork, said lockout mechanism comprising:

> first and second fluid chambers in fluid communication;
>
> a fluid circulation control unit positioned between and controlling fluid flow between said first and second fluid chambers;
>
> wherein:
>
> said fluid circulation control unit is positionable between an off position in which fluid flows between said first and second chambers such that compression and rebound of said fork are permitted, and an on position in which fluid flow between said first and second chambers is inhibited such that compression of said fork is inhibited; and

a blow-off valve positioned between said first and second fluid chambers and permitting limited fluid flow from said first fluid chamber to said second fluid chamber even when said fluid circulation control unit is in said on position.

The first step in claim construction is to look at the language of the claim itself. *Bell Atlantic Network Servs., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). Claim terms are given their ordinary and accustomed meaning as understood by one of ordinary skill in the art. *Id.* There is a heavy presumption that the ordinary meaning attached to a term or phrase in a claim. *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). That presumption may be rebutted by showing: (1) the patentee acted as his own lexicographer, clearly defining the term as having other than the ordinary meaning within the patent or prosecution history; (2) the patentee distinguished

that term from prior art by defining it specifically; (3) the term itself is so unclear as to require other evidence to define it; or (4) if phrased in a means-plus-function format, the term will cover nothing more than the structure disclosed in the specification. *Id.* at 1366-67. With this guidance in mind, I consider each challenged phrase in turn.

A. "lockout mechanism"

SRAM contends that I should construe "lockout mechanism" according to its ordinary meaning; that is, meaning "a mechanical device that locks and unlocks." Fox argues that Claim 16 itself defines the phrase, and that I should construe the phrase as including all the limitations listed in Claim 16. Fox's argument is circular: the term is used to define the limitation that defines the invention; *see Allen Engineering Corp. v. Bartell Indus.*, 299 F.3d 1336, 1344 (Fed. Cir. 2002). Fox would have the limitation define the term. The plain meaning of the phrase makes sense in the context of the overall patent and is consistent with both the specification for the '049 Patent and the prosecution history. Fox provides no reason to deviate from that meaning. Additionally, the term "lockout mechanism" is used repeatedly in other claims of the '049 Patent, including claims that precede Claim 16. Terms used in different claims should be construed consistently unless there is a clear intention otherwise. *Fin Control Sys. Pty., Ltd. v. OAM, Inc.*, 265 F.3d 1311, 1318 (Fed. Cir. 2001). Construing the

3

term as Fox would have it would render earlier claims dependent on Claim 16, which is not permitted. 35 U.S.C. § 112, ¶ 4. There is no indication that SRAM intended "lockout mechanism" to have one meaning for Claim 16 and another for the other claims of the patent. "Lockout mechanism" is defined as "a mechanical device that locks and unlocks."

B. "energy absorbing suspension system"

The parties agree that "energy absorbing" should be given its plain meaning. However, they disagree about the meaning of "suspension system." SRAM argues for the plain meaning. Fox states that "suspension" can be given its ordinary meaning, but argues that "system" should be construed as "fork," claiming that "fork" and "system" are used interchangeably in the '049 Patent. The terms are not used interchangeably. Claim 16, the claim at issue here, uses the term "fork" as an example of a "suspension system" (13:38-43), as does the specification of the patent (1:25-33). Fox does not overcome the strong presumption given to the plain meaning of terms. "Energy absorbing suspension system" is construed as an "arrangement of suspension parts that absorbs energy."

C. "permitting compression"; "such that compression and rebound of said fork are permitted"

The parties again agree on part of the construction; that "permitting" means "allowing." They differ on the construction of

4

"compression." SRAM argues that the term needs no further definition, and that to the extent that it is further construed, it should be given the term's plain meaning. Fox argues that "compression" should be construed as "the pair of inner tubes of the fork slide into the pair of outer tubes of the fork." "Compression" needs no further construction; its meaning is clear and ordinary. Fox's proposed construction states the means by which compression is accomplished within the structure described by Claim 16; it does not define the term itself. The parties also disagree on the construction of "rebound" in the second phrase. SRAM again argues for no construction or for plain meaning; Fox argues for "the pair of inner tubes of the fork slide out of the pair of outer tubes of the fork." The plain meaning here - that "rebound" means "expansion" - is appropriate. The terms are used interchangeably throughout the '049 Patent. (1:38-39; 9:8-17) To the extent that these phrases require construction, they should be read as "allowing compression" and "such that compression and expansion of said fork are allowed."

D. "inhibiting compression"; "such that compression of said fork is inhibited"

I have already determined that "compression" requires no further construction. The disagreement with respect to these phrases centers on the words "inhibiting" and "inhibited." Both parties argue a plain meaning interpretation; Fox for "prohibit"

5

and SRAM for "restrain." "Inhibit" is used to describe the state of the suspension system when fluid is not permitted to freely flow from one part of the system to another, thus not permitting compression. Fluid flow can take place under certain circumstances, however; it is not completely prohibited, merely limited or restrained. To the extent "inhibit" requires construction, these phrases should be read as "restraining compression" and "such that compression of said fork is restrained."

E. "relatively rigid system"

As noted above, "system" means just that, and not "fork" as Fox would construe the term. The parties here differ on the meaning of "relatively rigid." "Rigid" itself requires no further construction; SRAM's proposed definition of "stiff" is unnecessary for understanding the claim. SRAM also proposes that "relatively" be construed as "comparatively." Although Fox argues for a further clarification, none is necessary.

F. "positionable between"

The parties agree that this phrase means "able to be switched between." Fox, however, would add another phrase, "at the preference of the user." Fox argues that "positionable between" must include this limitation, as the specification of the '049 Patent describes a mechanism that can be switched on or off by the user. Even if the specification of a patent only describes one

6

embodiment of an invention, the patent will not be limited to that embodiment unless the "patentee has demonstrated a clear intention to limit the claim scope using 'words or expressions of manifest exclusion or restriction.'" *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004). No such limiting intention can be found within the '049 Patent. The phrase is construed as "able to be switched between."

G. "blow-off valve"

The parties agree that "blow-off valve" means "pressure relief valve." Fox argues for the additional limitation that it is a "device that permits the discharge of fluid under pressure upon a high force impact." The phrase really at issue is "upon a high force impact," as the rest of Fox's proposed addition simply defines or restates "pressure relief valve." Fox's proposed addition of "upon a high force impact" is not supported by the '049 Patent, which states in the specification that the blow-off valve will be activated "if sufficient force from an impact or other force input is imparted." (8:12-13) Fox cites to the specification to support its argument for the limitation, but the section cited states that the blow-off valve "functions upon harsh or sudden impacts." (8:36) The valve is not limited to functioning under a "high force impact." The phrase is construed as "pressure relief valve."

7

H. "fluid circulation control unit"; "controlling fluid flow between"

The parties agree that these phrases should be given their ordinary meanings. However, Fox argues that these phrases constitute a means-plus-function element, and should be limited to the means disclosed in the specification. Such a specially claimed element is defined in 35 U.S.C. § 112, ¶ 6:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

When a claim does not use the term "means," a rebuttable presumption arises that the element is not a means-plus-function element. *CCS Fitness*, 288 F.3d at 1369. Claim 16 does not use the term "means." The presumption therefore arises that these phrases are not a means-plus-function element.

Fox can rebut that presumption by showing that the phrases recite a "function without reciting sufficient structure for performing that function." *Id.* The presumption is strong and not easily overcome. *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed. Cir. 2004). "Control" has an ordinary meaning of "a device for regulating and guiding a machine." RANDOM HOUSE COLLEGE DICTIONARY 293 (Rev. ed. 1984); *see also* WEBSTER'S NEW ENCYCLOPEDIC DICTIONARY 219 (1993). Within the context of the '049

8

Patent, the phrase "fluid circulation control unit" means "a device that regulates the circulation of fluid within the system." That many different structures may be so described does not make this a means-plus-function element. *Lighting World*, 382 F.3d at 1361. The phrase is also used as the name for a structure within the patent. (7:13-14; Fig. 8) *Id.* Fox has failed to overcome the presumption that § 112, ¶ 6 does not apply.

I. "fluid flows between said first and second chambers"

The parties appear to agree that this phrase should be given its ordinary meaning; no further construction is necessary.

J. "fluid flow between said first and second chambers is inhibited"

The parties disagree only on the meaning of "inhibited." As stated above, "inhibited" means "restrained"; thus, the construction of this phrase is "fluid flow between said first and second chambers is restrained."

ENTER ORDER:

*Elaine E. Bucklo*
_____
**Elaine E. Bucklo**
United States District Judge

Dated: November 18, 2005